**FERGUSON–KELLER ASSOCIATES, INC., Plaintiff,**

v.

**PLANO MOLDING COMPANY, LLC, Defendant.**

Civ. No. 17–1713 (RHK/TNL)

United States District Court, D. Minnesota.

Signed August 8, 2017

Jason E. Engkjer, Michael Clark Glover, Lommen Abdo, P.A., Minneapolis, Minnesota, for Plaintiff.

Anthony G. Edwards, Andrew D. Parker, Parker Daniels Kibort, LLC, Minneapolis, Minnesota, for Defendant.

## MEMORANDUM OPINION AND ORDER

PAUL A. MAGNUSON, United States District Judge

### INTRODUCTION

In this action, Plaintiff Ferguson–Keller Associates, Inc. ("Ferguson–Keller") alleges Defendant Plano Molding Company, LLC ("Plano") violated Minnesota law when it terminated the parties' sales-representative relationship. Presently before the Court is Plano's Motion to dismiss or,

in the alternative, to transfer to the United States District Court for the Northern District of Illinois. For the reasons that follow, the Court will grant the Motion and transfer the case.

## BACKGROUND

The Amended Complaint alleges the following facts. Ferguson–Keller is a Minnesota-based "multi-line, independent sales representative." (Am. Compl. ¶¶ 1, 7.) Plano is an Illinois-based manufacturer of outdoor products, including tackle boxes, gun cases, and ice-fishing equipment. (Id. ¶¶ 2, 8.) "For approximately 35 years, Ferguson–Keller . . . represented" Plano in marketing its products to commercial retailers and distributors in the upper Midwest. (Id. ¶ 9.) The parties' relationship was memorialized in a series of oral and written sales-representative contracts, the most recent of which was dated February 1, 2016 (the "Agreement"); it is attached to the Amended Complaint as Exhibit A. Under the Agreement, Plano agreed to pay Ferguson–Keller commissions for sales made in its defined territory, which included six Midwestern states. (Agreement §§ 4, 14.)

The Agreement contained two provisions of particular relevance to the instant Motion. First, it provided that it was for a one-year term and, hence, expired on February 1, 2017, unless terminated earlier by either party on 30 days' notice. (Id. § 1.) Second, it contained a clause providing that it was "performable in whole or in part in Illinois and venue is proper only in Illinois." (Id. § 15.)

The Agreement expired on February 1, 2017, but Ferguson–Keller continued to market Plano's products to retailers and distributors. (Am. Compl. ¶ 18.) On February 14, 2017, however, Plano wrote Ferguson–Keller and advised that it was terminating the parties' relationship, "effective April 1, 2017." (Id. ¶ 19 & Ex. B.) Plano agreed to pay Ferguson–Keller for all sales it made through March 31, 2017. (Id.)

Ferguson–Keller responded by commencing this lawsuit. Its two-Count Amended Complaint seeks a declaration that Plano's termination was "ineffective" and violated Minnesota Statutes § 325E.37, the Minnesota Termination of Sales Representatives Act.[1] It seeks a declaration that Plano's "purported termination of the parties' sales-representative agreement is . . . void . . . [and that the Agreement] shall remain effective until February 1, 2018." Invoking the Agreement's forum-selection clause, Plano now moves to dismiss or transfer. The Motion has been fully briefed and the Court heard argument on August 3, 2017; the Motion is now ripe for disposition.

## STANDARD OF REVIEW

■ Because Plano's Motion seeks alternative forms of relief (dismissal or transfer), the appropriate standard of review is dictated by the manner in which the Court disposes of the Motion. To be sure, authority exists for *dismissing* a case laying venue in a district other than one agreed to by contracting parties. E.g., Union Elec. Co. v. Energy Ins. Mut. Ltd., 689 F.3d 968, 971–72 (8th Cir. 2012); United Sugars Corp. v. Tropical Worldwide Corp., Civ. No. 13-2718, 2014 WL 1874753, at *7 (D. Minn. May 9, 2014) (Montgomery, J.). Those cases, however, addressed dismissal under Federal Rule of Civil Procedure 12(b)(6). Here, by contrast, Plano invokes Federal Rule of Civil Procedure 12(b)(3),[2]

---

1. Among other things, the Act provides that a manufacturer or wholesaler of goods may not terminate a sales-representative agreement absent good cause or at least 90 days' notice. Minn. Stat. § 325E.37, subd. 2–3.

2. Although Plano mentions Rule 12(b)(6) in its brief, its Motion invokes only Rule 12(b)(3). (See Doc. No. 7.)

which authorizes a court to dismiss an action for "improper venue." As the Supreme Court made clear in Atlantic Marine Construction Co. v. U.S. District Court for Western District of Texas, a forum-selection clause cannot render venue "improper" under Rule 12(b)(3), and hence that Rule "is not [a] proper mechanism[ ] to enforce [such] a . . . clause." 571 U.S. 49, 134 S.Ct. 568, 580, 187 L.Ed.2d 487 (2013). Accordingly, the Court will consider the alternative request in Plano's Motion: that the case be transferred pursuant to 28 U.S.C. § 1404(a).

■ Section § 1404(a) provides "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." In the "typical case," therefore, a district court considering a § 1404(a) motion "must evaluate both the convenience of the parties and various public-interest considerations" to determine whether transfer is warranted. Atl. Marine, 134 S.Ct. at 581. The plaintiff's choice of forum is entitled to "some weight" in the analysis, and the burden rests with the movant to overcome that weight by showing (1) the parties' private interests and (2) other public-interest considerations militate in favor of transfer. Id at 581 & n.6.[3]

■ "The calculus changes, however, when the parties' contract contains a valid forum-selection clause." Id. at 581. In that instance, the plaintiff's choice of forum "merits no weight," and a court "should not consider arguments about the parties' private interests," as they previously agreed (contractually) to litigate in a specified forum. Id. at 581–82. Furthermore,

the plaintiff, as the party flouting the chosen forum, bears the burden of demonstrating the public-interest factors merit transfer. Id. at 583. Such factors "will rarely defeat a transfer motion," and a district court "should ordinarily transfer the case to the forum specified" in the parties' agreement. Id. at 581–82.

## ANALYSIS

■ There is no dispute here that the Agreement contains a forum-selection clause specifying that "venue is proper only in Illinois." Nor is there any dispute that *if* this clause were to apply, Ferguson–Keller's claims would fall within its ambit—indeed, its counsel conceded the point at oral argument. Instead, Ferguson–Keller argues the clause cannot be invoked by Plano because the Agreement had expired when Plano "unlawfully" attempted to terminate the parties' relationship. Although the parties continued as if the Agreement remained in place after its February 1, 2017 expiration, Ferguson–Keller argues it is unclear (i) whether the Agreement was "renewed," (ii) whether the parties were operating under an implied-in-fact contract, and (iii) if some continuing contractual relationship existed, whether that relationship encompassed the forum-selection clause. Because of these uncertainties, Ferguson–Keller argues the case must remain here. The Court does not agree.

At the outset, the Court notes the inherent inconsistency in Ferguson–Keller's positions. On one hand, it contends that despite the "expiration" of the Agreement, the parties' contract "continued" and Plano could not simply terminate it without ap-

3. A court faced with a motion under § 1404(a) also must determine "whether the action might have been brought in the proposed transferee district." Austin v. Nestle USA, Inc., 677 F.Supp.2d 1134, 1136 (D. Minn. 2009) (Kyle, J.) (citation omitted). Here, it is undisputed the claims against Plano "might have been brought" in the Northern District of Illinois, the location of its home office.

propriate notice. (Am. Compl. ¶¶ 24–25.) Yet on the other hand, Ferguson–Keller contends the forum-selection clause cannot be enforced because the Agreement had expired. Ferguson–Keller is trying to have its cake and eat it too: it wants to foist the Agreement onto Plano while at the same time avoiding application of one of the Agreement's terms (the forum-selection clause). Indeed, consider what Ferguson–Keller asks of the Court: it seeks "a declaration that the parties' sales representative agreement shall remain effective until February 1, 2018." (Id. ¶ 29.) If the Court were to agree and declare the Agreement remained in place for another year, wouldn't that necessarily require this litigation to be venued in Illinois? How could this Court grant Ferguson–Keller's requested relief and determine the Agreement was renewed for an additional year while at the same time ignoring, in that very same Agreement, that the parties agreed to litigate "only in Illinois"?

■ In any event, the purported expiration of the Agreement does not undermine application of the forum-selection clause. Despite Ferguson–Keller's arguments to the contrary, "neither termination nor cancellation [of a contract] affect those terms that relate to settlement of disputes or choice of law or forum selection clauses." 13 Corbin on Contracts § 67.2, at 12 (rev. ed. 2003); accord, e.g., U.S. Smoke & Fire Curtain, LLC v. Bradley Lomas Electrolok, Ltd., 612 Fed.Appx. 671, 672–73 (6th Cir. 2015) (per curiam ) (noting the "greater weight of authority" holds that "dispute-resolution provisions, such as forum-selection clauses, are enforceable beyond the expiration of the contract"); VERSAR, Inc. v. Ball, No. Civ. A. 01-1302, 2001 WL 818354, at *2 (E.D. Pa. July 12, 2001) ("Unless otherwise expressed, a choice of forum clause does not expire upon termination of the contract from which it derives."). This is especially so where, as here, "the plaintiff's claims involve rights

arising out of the [expired] contract and the entire business relationship between the parties stems from that contract." Weingrad v. Telepathy, Inc., No. 05 Civ. 2024, 2005 WL 2990645, at *3 (S.D.N.Y. Nov. 7, 2005); accord, e.g., Tex. Source Grp., Inc. v. CCH, Inc., 967 F.Supp. 234, 238 (S.D. Tex. 1997).

Ferguson–Keller argues that even if the Agreement continued in some fashion beyond its expiration date, this "does not mean ... that every term," such as the forum-selection clause, became "part of the new contract." (Mem. in Opp'n at 9.) It contends that "whether the parties, in fact, renewed the [ ] Agreement or operated under an unwritten agreement"—and if the latter, whether that unwritten contract included an agreement to litigate in Illinois—are "core" issues that have not yet been decided in this case. (Id. at 8 & n.4.) Until such a determination is made, it argues, the forum-selection clause cannot be enforced. But accepting this logic would defeat the very purpose of a forum-selection clause and turn contract law on its head. If a plaintiff (such as Ferguson–Keller here) were to challenge the existence or terms of a contract, the case would first have to be decided on the merits (determining whether a valid contract existed) and only then could the forum-selection clause be applied—that is, once the case was effectively over. This would be a strange way to run a railroad. See, e.g., Tex. Source Grp., 967 F.Supp. at 237 (noting that under the logic espoused by Ferguson–Keller, "a party could defeat a validly negotiated forum-selection clause by simply alleging that the nonmoving party breached the contract").

In support of its argument that the forum-selection clause does not apply, Ferguson–Keller leans heavily on Judge Schiltz's decision in Webb Candy, Inc. v. Walmart Stores, Inc., Civ. No. 09-2056,

2010 WL 2301461 (D. Minn. June 7, 2010). There, the Court declined to enforce a written agreement's forum-selection clause after the agreement's expiration. Id. at *8–10 (concluding it was a question of fact whether a new contract was formed and, if so, whether it contained a forum-selection clause). But Webb Candy does not aid Ferguson–Keller's cause for several reasons.

First, that case nowhere discussed the body of case law recited above, holding that even when a contract expires, dispute-resolution provisions therein, such as forum-selection clauses, survive the expiration. Second, the contract at issue in Webb Candy contained a "survivability" clause expressly providing that only certain terms survived the contract's expiration. Id. at *6–7. No such clause is found in the Agreement here.[4] Third, but perhaps most importantly, Webb Candy recognized that contractual terms *will* carry forward beyond a contract's expiration absent some showing of contrary intent. Id. at *10; accord, e.g., Celanese Acetate, LLC v. Lexcor, Ltd., 632 F.Supp.2d 544, 550 (W.D.N.C. 2009) ("[G]eneral principles of contract law teach us that when a contract lapses but the parties to the contract continue to act as if they are performing under a contract, the material terms of the prior contract will survive intact unless either one of the parties clearly and manifestly indicates, through words or through conduct, that it no longer wishes to continue to be bound thereby.") (quoting Luden's Inc. v. Local Union No. 6 of Bakery, Confectionery & Tobacco Workers' Int'l Union, 28 F.3d 347, 356 (3d Cir. 1994)). Here, and unlike in Webb Candy, it would be difficult for Ferguson–Keller to point to such contrary intent given its express allegation that "the parties continued to act, operate and abide by the essential terms of the [ ] Agreement" even after its expiration. (Am. Compl. ¶ 24; accord id. ¶ 17 ("After February 1, 2017, Ferguson–Keller continued to represent Plano ... *under the [ ] Agreement*.") (emphasis added).)

For these reasons, the Court concludes the Agreement's forum-selection clause applies to Ferguson–Keller's claims. This is the end of the matter: as noted in Atlantic Marine, when a defendant invokes a valid forum-selection clause, "a district court should transfer the case unless extraordinary circumstances unrelated to the convenience of the parties clearly disfavor a transfer." 134 S.Ct. at 575. Ferguson–Keller offers no "extraordinary circumstances" that "clearly disfavor transfer" here.

## CONCLUSION

Based on the foregoing, and all the files, records, and proceedings herein, it is **ORDERED** that Plano's Motion for Dismissal or, in the Alternative, for Transfer of Venue (Doc. No. 7) is **GRANTED**, and this action is **TRANSFERRED** to the United States District Court for the Northern District of Illinois. The Clerk of the Court is directed to fake all steps necessary to

---

4. Interestingly, Webb Candy declined to apply a forum-selection clause in an expired contract even though the agreement provided that "[t]he provisions of this Agreement which by their nature are intended to survive termination of this Agreement (*including but not limited to ... forum selection ...*) shall survive its termination." 2010 WL 2301461, at *3 (emphasis added). Regardless, courts have "upheld the applicability of forum selection clauses even where the termination provision of the contract expressly provides for the survival of certain enumerated provisions but not the forum selection clause." AAMCO Transmissions, Inc. v. Romano, 42 F.Supp.3d 700, 707 (E.D. Pa. 2014) (collecting cases). This, of course, is consistent with the "greater weight of authority" noted in U.S. Smoke, 612 Fed. Appx. at 672–73.

effectuate this transfer in an expeditious fashion.